

**FILED**

MAR 1 6 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DOUGLAS AARON McCLAIN, JR.,

Movant,

v.

UNITED STATES OF AMERICA,

Respondent.

Case No.: 3:16-cv-02495-BEN
3:12-cr-00918-BEN (2)

**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**

This matter comes before the Court for consideration of the Motion to Vacate, pursuant to 28 U.S.C. § 2255, filed by Movant Douglas Aaron McClain, Jr. ("Movant"). The Court has considered the parties' papers, relevant legal authorities, and the record in this case. The Court hereby DENIES the Motion and DECLINES to issue a certificate of appealability.

## BACKGROUND

**A.    Factual Background and Procedural History**

On March 9, 2012, Movant and his two co-Defendants, James T. Miceli[1]

---

[1]    Miceli died prior to trial. Movant was subsequently tried with his remaining co-defendant Spanier after Movant's motion for severance based upon antagonistic defenses was denied by the Court. (Doc. No. 459 at 2.)

1

1  ("Miceli") and Jeffrey R. Spanier ("Spanier") were charged in a thirty-five count
2  Indictment with (a) conspiracy to commit mail fraud, wire fraud, and securities fraud, in
3  violation of 18 U.S.C. § 371 [count one]; mail fraud, in violation of 18 U.S.C. § 1343
4  [counts nine through twenty-three]; securities fraud, in violation of 15 U.S.C. §§ 78j(b)
5  and 78ff [count twenty-four]; and money laundering, in violation 18 U.S.C. § 1957
6  [counts thirty-three through thirty-five]. The charges arose from Movant and his co-
7  defendant's actions in a stock-loan fraud scheme resulting in more than $100 million in
8  victim losses. Movant was represented by Mark Adams, Esq.

9      Trial commenced in this matter on May 14, 2013. After twelve days of testimony,
10  both parties rested, and the Court instructed the jury. Movant notes that the Court
11  declined to give a supplemental jury instruction on the defense theory that the sale of the
12  stock was not in itself a crime and it was not a crime to use the proceeds of the sale to
13  fund the loan. (Doc. No. 459 at 5.)

14      On May 31, 2013, Movant was convicted of "(a) conspiracy to commit mail fraud,
15  wire fraud, and securities fraud, in violation of 18 U.S.C. § 371 [count one]; mail fraud,
16  in violation of 18 U.S.C. § 1341 [counts two through eight]; wire fraud, in violation of 18
17  U.S.C. § 1343 [counts nine through twenty-three]; securities fraud, in violation of 15
18  U.S.C. §§ 78j(b) and 78ff [count twenty-four]; and money laundering, in violation of 18
19  U.S.C. § 1957 [counts thirty-three through thirty-five].[2][3] (Doc. No. 459 ¶¶ 1, and 4.)

20      On September 23, 2013, the Court sentenced Movant to a term of sixty months on
21  count one, fifteen years on courts two through twenty-four, and one hundred twenty
22  months on counts thirty-three through thirty-five, all to be served concurrently. (Doc.
23  No. 459 ¶ 3.)

---

26  [2]    All docket citations refer to the criminal case docket, No. 13-cr-1128.
27  [3]    "The court also imposed a period of supervised release for three years on all
28  counts, to run concurrently, a special penalty assessment of $2,700.00, and ordered
   restitution of $81,731,879.98. (Doc. No. 459 at 2.)

2

On October 1, 2013, Movant filed a direct appeal in the Ninth Circuit Court of Appeal raising three claims of error. (Doc. No. 459 ¶¶ 5, and 6.) The Court of Appeals affirmed the convictions and sentence in an unpublished memorandum on February 19, 2015. *Id.* ¶ 7. Thereafter, on October 5, 2015, the Supreme Court of the United States denied Movant's Petition for Writ of Certiorari. *Id.* ¶ 8.

Movant filed the instant Habeas Petition on October 4, 2016, alleging ineffective assistance of trial counsel and Due Process violations, both of which include numerous sub-claims.

## LEGAL STANDARD

Under section 2255, a movant is entitled to relief if the sentence: (1) was imposed in violation of the Constitution or the laws of the United States; (2) was given by a court without jurisdiction to do so; (3) was more than the maximum sentence authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Speelman*, 431 F.3d 1226, 1230 n.2 (9th Cir. 2005). If it is clear the movant has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986).

## DISCUSSION[4]

A. <u>**Ineffective Assistance of Counsel Claims**</u>

Movant seeks relief on the basis that trial counsel was ineffective. The Sixth Amendment right to counsel guarantees not only assistance but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on his ineffective assistance of counsel claim, the Movant must establish two things. First, Movant must establish that trial counsel's performance fell below an "objective standard

---

[4] The Court determines there is no need for an evidentiary hearing.

of reasonableness," under prevailing professional norms. *Id.* at 687-88. To meet his burden on the first prong Movant must show that trial counsel made errors so serious that she was not functioning as the "counsel" guaranteed by the Sixth Amendment. The relevant inquiry is not what trial counsel could have done, but rather whether the choices made by trial counsel were reasonable. *See Babbit F. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).

To meet his burden on the second prong, Movant must show that "there is a reasonable probability that, but for [trial] counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id.* "The ultimate question to be answered is whether counsel's errors 'so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.'" *Jones v. Wood*, 114 F.3d 1002, 1010 (9th Cir. 1997) (*citing Nix v. Whiteside*, 475 U.S. 157, 175 (1986)). The Court, however, need not consider one component, either the incompetence or prejudice prong, if there is an insufficient showing of the other. *Strickland*, 466 U.S. at 697.

Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. An attorney's tactics at trial generally are given deference, and differences of opinion between the criminal defendant and their trial attorney with regards to trial tactics does not by itself constitute ineffective assistance. *See United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981). Tactical decisions deserve deference when (1) counsel bases trial conduct on strategic considerations, (2) counsel makes an informed decision based upon investigation, and (3) the decision appears reasonable under the circumstances. *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

///

///

## 1.  Failure to preclude the use of the term "Ponzi scheme" during the trial.

Movant argues that trial counsel was ineffective because he failed to file a motion *in limine* to preclude the use of the phrase "Ponzi scheme" during the trial. "In fact, trial counsel filed *no* motions *in limine*, but instead joined in the motions filed by co-defendant Miceli, who also did not object to the Government's use of the term 'Ponzi scheme." (Doc. No. 459 at 2.)  Furthermore, "[t]rial counsel was aware that Spanier intended to blame Mr. McClain for everything and claim he [Spanier] was a mere go-between, as evidenced by the motion for severance that trial counsel filed. *Id.* at 3. According to Movant, when the motion was denied, his trial counsel should have filed an *in limine* motion to prevent Spanier from being portrayed as an innocent dupe. Movant claims that would have thwarted the government and Spanier's counsel's intention of connecting Movant to the inaccurate and inflammatory term "Ponzi scheme," before the jury.

Respondent contends that Movant's position on his counsel's failure to file a motion *in limine* is irrelevant because "the question whether the underlying fraud was a 'Ponzi scheme' or whether McClain participated in such a scheme, is not of concern." (Doc. No. 463 at 6.)  This is because the essential trial issue was whether Movant had the intent to defraud the borrowers and conspire with his co-defendants in the execution of the said fraud.  This is further illustrated by the fact that Respondent only referenced the term "Ponzi scheme" once during its closing statement, while Spanier's attorney used it more than 20 times throughout the trial. *Id.*  Thus, the use of the term "Ponzi scheme" – while accurate and supported by the trial evidence – did not prejudice Movant. *Id.*

The Court finds no merit to Movant's claim that trial counsel provided deficient performance by not filing a motion *in limine* precluding the use of "Ponzi scheme" by everyone during the trial. Fed. R. Civ. P. 14(a).  Additionally, the Court concludes that Movant failed to meet his burden of demonstrating that if the *in limine* motion had been filed, the Court would have granted it. Thus, he cannot show prejudice. Therefore, the Court **DENIES** relief on this claim.

5

## 2.  Failure to Present Evidence Negating Intent to Defraud.

Movant argues that trial counsel was ineffective because he failed to investigate or present evidence that Argyll had numerous funding sources that would have dispelled the Ponzi scheme analogy and shown that Argyll failed because of its business model.  For example, to refute the Government's claim that Argyll was undercapitalized, trial counsel could have presented evidence that Immunosyn was providing funds to Argyll as early as 2004, which was independent of any funds Argyll obtained from the sale of its own stock. (*See* Doc. No. 459 at 4.)  Moreover, he could have also shown that Argyll successfully bought back stock previously used to fund a loan in 2006, by returning 200,000 shares of DOV Pharmaceutical, Inc. stock for cash. *Id.*  Alternatively, he could have shown that "Argyll had significant resources in M3 Energy Resources (hereafter referred to as 'M3 Energy', a Coal company located in Kentucky)" as another potential funding source.[5] *Id.*

Respondent disputes Movant's claim that trial counsel failed to investigate, and present evidence negating Movant's intent to defraud Argyll's borrowers or to refute the Government's assertion that Argyll was undercapitalized. (*See* Doc. No. 463 at 9-10.)  Trial counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[6]  A review of the docket and trial transcripts reflects that trial counsel did just that by engaging in extensive pretrial discovery followed by providing Movant with a competent defense throughout the trial.  This included cross-examining witnesses, raising substantive legal issues, and arguing zealously that Movant lacked any intent to defraud the borrowers. (Doc. No. 463 at 10-

---

[5]  M3 Energy had declared bankruptcy due to a plunge in coal prices, but in 2011 still had assets and bids by investors willing to pay $45,000,000, enough to buy back the shares and return them to investors once the assets were sold. (Doc. No. 459 at 4.)

[6]  Where an attorney has consciously decided not to conduct further investigation because of reasonable tactical evaluations, his performance is not constitutionally deficient. *See Siripongs v. Calderon*, 133 F.3d 732, 734 (9th Cir. 1998).

6

11.) *Strickland*, 466 U.S. at 691; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Respondent further contends that the points Movant raises in his § 2255 motion would have been fleshed out as trial counsel prepared Mr. McClain's defense. The fact that trial counsel chose not to focus on or present evidence on those points is likely a strategic decision. Where an attorney consciously decides not to conduct further investigation because of reasonable tactical evaluations, his performance is not deemed constitutionally deficient. *See Siripongs v. Calderon*, 133 F.3d 732, 734 (9th Cir. 1998).

In this case, Movant is unable to establish: 1) there was additional evidence that trial counsel could have obtained had he conducted further investigation; and 2) even if there was, that trial counsel did not make a strategic decision. For a jury, this was a complicated financial case. Defense counsel very well may have made a strategic decision to keep his theory simple for the jury in the hopes of being more persuasive. Moreover, Movant's claims about Immunosyn appear to lack merit because Immunosyn was a start-up company with "no assets, liquidity or cash flow, and a substantial net loss from 2007 through 2009." *Id.* at 11. "Since Immunosyn lacked assets, liquidity, and cash flow, trial counsel was not ineffective for failing to present an assertion that was directly contradicted by the company's own public filings." *Id.* Thus, despite Movant's claims, none of the evidence that he now claims trial counsel should have pursued would have necessarily convinced the jury that McClain's lacked intent to defraud borrowers.

Movant has not established that trial counsel's investigation was deficient, nor that he was prejudiced as a result. Therefore, as to Movant's ineffective assistance argument the Court **DENIES** relief on this claim.

**3.    Failure to Present Evidence to Impeach Spanier.**

Movant argues that trial counsel was ineffective because he failed to impeach Spanier on cross-examination about specific emails and/or a loan made to Wholstein to prove Spanier perjured himself on direct exam. Movant claims trial counsel should have also questioned him about having limited knowledge of Argyll's business operations since he was only *'a salesman,'* why he had been using Amerifund as "his 'trade' name

1  for at least ten years," or why he had been using "loan agreements in the name of
2  Amerifund Capital holdings" to conduct business. (Doc. No. 459 at 4-5.)

3      Respondent contends that Movant's claims "Spanier was doing more than referring
4  loans to Argyll" or that his trial counsel failed to refer to emails and a loan with Scott
5  Wholstein during cross-exam are irrelevant to deciding the motion at hand. (*See* Doc.
6  No. 463 at 13.) Moreover, even if Movant's claims are correct, they still fall short of
7  demonstrating any prejudice suffered by Movant because he fails to explain how the
8  emails and/or the Wholstein loan documents would have established that Spanier
9  committed perjury, or proven Movant's innocence. *See Id.*

10     Here again, Movant has not demonstrated trial counsel's decision not to present
11 evidence to impeach Spanier was not the product of a trial strategy. Although he may
12 now disagree with his choices, a "tactical decision by counsel with which the defendant
13 disagrees cannot form the basis of a claim of ineffective assistance of counsel." *Guam v.
14 Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984) (per curiam). The Court concludes that
15 Movant has not shown that trial counsel's performance fell below an objective standard
16 of reasonableness. In addition, as set forth at the end of this section, the Court finds that
17 he has not shown that he suffered any prejudice.

18     With respect to trial counsel's cross-examination of witnesses, impeachment
19 tactics generally are considered a matter of trial strategy. *See Reynoso v. Giurbino*, 462
20 F.3d 1099, 1113 (9th Cir. 2006). The Court finds it notable that while Movant argues
21 trial counsel should have presented evidence to impeach Spanier, he has not suggested
22 that his investigation into these avenues of cross-examination was inadequate.[7] *See id.*;
23 *cf. United States v. Bosch*, 914 F.2d 1239, 1246 (9th Cir. 1990) (concluding that trial
24 counsel's investigation did not fall below an objective standard of reasonableness where
25 "subsequent investigation" turned up some material that could have been useful in

26
27
28
[7]     It is worth mentioning that Movant's trial counsel is an accomplished legal
practitioner with years of criminal trial experience.

8

impeaching government witnesses). "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681. When the Court considers Movant's arguments, in light of the cross-examination trial counsel conducted, the Court cannot say his performance was objectively unreasonable.

In addition, the Court concludes that Movant has not met his burden to show that if this evidence had been presented, "there is a reasonable probability that ... the result of the proceeding would have been different." *Id.* at 694. Trial counsel's strategy was to put the Government to its burden of proof on the element of intent, as the questions from the jury suggest and from the length of its deliberations, the jury did struggle with the issue of Movant's intent. Although some of the evidence that Movant relies on may have provided an additional basis to refute his intent to defraud the borrowers,[8] the Court concludes that it is not sufficient to undermine confidence in the outcome of the proceedings. *Id.* Therefore, the Court **DENIES** relief on this claim.

### 4. Refusal to Move for a Mistrial.

Movant argues that trial counsel was ineffective because he failed to move for a mistrial or to request to reopen his closing argument when the Court declined to give the defense's supplemental jury instruction on its theory: that the sale of stock was not in itself a crime nor was it a crime to use the proceeds of the sale to fund the loan. (*See* Doc. No. 459 at 5.) Moreover, "[b]ecause there was no motion for mistrial or to reopen the argument, the Ninth Circuit refused to review the claim under plain error, precluding appellate review and making the failure to preserve it ineffective." (Doc. No. 465 at 9.)

---

[8] Impeaching Spanier "by showing that he originated the loan with Wholstein and sent to Argyll would have supported a defense that Mr. McClain believed that Wholstein loan did not differ from the standard template used by Argyll that allowed for the sale of the stock." (Doc. No. 465 at 9.)

9

1    Respondent disputes Movant's claim contending that "[w]hen a federal prisoner

2  presents a claim in a § 2255 petition that he has presented previously, the federal court

3  retains the jurisdiction to refuse to consider the claim on the basis that the prisoner is

4  abusing the writ." *Walter v. United States*, 969 F.2d 814, 815 (9th Cir. 1992). Since the

5  issue, in this case, was previously decided on direct appeal, that claim is not reviewable

6  in this subsequent § 2255. *See Walter*, 969 F.2d at 816. Accordingly, this Court declines

7  to review this contention again because it is bound by the decision of the Ninth Circuit.

8  (*See* Doc. No. 463 at 14-15.)

9    Here, the Movant is seeking a second bite of the apple to which he is not entitled.

10 As articulated above, the issue has already been decided on direct appeal. Even if it had

11 not, this Court would not fault trial counsel for choosing not to submit a motion which,

12 based on the record before it, lacked merit.[9] Accordingly, the Court concludes that

13 Movant has not met his burden to show that if trial counsel had moved for a mistrial or

14 requested to reopen his closing argument, the Court would have granted it. Thus, Movant

15 cannot show prejudice. Therefore, the Court **DENIES** relief on this claim.

16 **B.    Due Process Violation Claims**

17    Movant makes two claims that his conviction violated his due process rights.

18 Federal prisoners may challenge their convictions under § 2255 claiming there was a

19 fundamental defect that made the trial inherently unfair, resulting in a conviction

20 obtained in violation of the prisoner's Fifth Amendment due process rights. *See United*

21 *States v. Addonizio*, 442 U.S. 178, 184-85 (1979).

22    In *Brady*, the Supreme Court held that "the suppression by the prosecution of

23 evidence favorable to an accused upon request violates due process where the evidence is

24 material either to the guilt or to punishment, irrespective of the good faith or bad faith of

25 the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The duty to disclose

26

27 _____

28 [9]    A lawyer need not file a motion that he knows to be meritless on the facts and the
   law. *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005).

1  applies even when there has been no request by the accused. *United States v. Agurs*, 427
2  U.S. 97, 107 (1976). To show a *Brady* violation, Movant must show that the evidence at
3  issue: (1) is favorable to him, either because it is exculpatory or impeaching; (2) was
4  suppressed by the prosecution, either willfully or inadvertently; and (3) was material.
5  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

6       Evidence is material if there is "a reasonable probability that, had the evidence
7  been disclosed to the defense, the result of the proceeding would have been different."
8  *Cone v. Bell*, 556 U.S. 449, 469-70 (2009). "A reasonable probability is sufficiently
9  shown where the likelihood of a different result is great enough to 'undermine confidence
10 in the outcome of the trial.'" *Smith v. Cain*, —U.S.—, 132 S. Ct. 627, 630 (2012). A
11 violation will be found under *Brady* by showing that the favorable evidence reasonably
12 puts the whole case in such a different light as to undermine confidence in the verdict.
13 *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). Therefore, a "reasonable probability" may
14 not be based on mere speculation without adequate support. *See Wood v. Bartholomew*,
15 516 U.S. 1, 6-8 (1995). The mere possibility that undisclosed information might have
16 been helpful to the defense or might have affected the outcome of the trial does not
17 establish materiality under *Brady*. *United States v. Olsen*, 704 F.3d 1172, 1184 (9th Cir.
18 2013). For example, "evidence impeaching an eyewitness may not be material if ... other
19 evidence is strong enough to sustain confidence in the verdict." *Smith*, 132 S. Ct. at 630-
20 31.

21       A *Brady* claim has no good faith or inadvertence defense; whether non-disclosure
22 was negligent or by design it is the responsibility of the prosecutor. *Gannt v. Roe*, 389
23 F.3d 908, 912 (9th Cir. 2004). Further, a prosecutor's duty to disclose favorable evidence
24 extends to evidence or information known only to the police. *See Phillips v. Ornoski*,
25 673 F.3d 1168, 1186-87 (9th Cir. 2012). Finally, due process requires only the disclosure
26 of exculpatory material in enough time to permit the defendant to make effective use of
27 the material. *See LaMere v. Risley*, 827 F.2d 622, 625 (9th Cir. 1987).
28

Movant argues: (1) that he was denied due process because the government failed to inform the defense of evidence that Argyll had sufficient resources to buy back the stock in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (2) that he was denied due process because the government presented a theory at trial that it knew was contrary to evidence from the SEC filings.

### 1.     Denial of Due Process because the government withheld material in violation of Brady.

Movant's first due process claim alleges that Respondent failed to produce evidence regarding an SEC filing (*SEC v. Sharon R. Vaughn and Directors of Financial Group, Ltd.*, case number 06C1135, from the Northern District of Illinois) which allegedly undercut its case theory that Argyll was undercapitalized.[10] (Doc. No. 459 at 10.) Specifically, Movant contends the evidence demonstrated that Argyll had other investors and alternative fund sources (*aside from its borrowers in this case*) which would have enabled it to buy back the outstanding stock. Thus, the Respondent was obligated to produce the exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963); and *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). *Id.*

Respondent contends that Movant's argument lacks merit because (1) Movant was independently aware of the SEC's case in the Northern District of Illinois, (2) the United States Attorney's office in the Southern District of California lacked possession and control over the Northern District of Illinois documents for discovery purposes, and (3) Movant failed to meet the requirements necessary for establishing materiality of the documents. (*See* Doc. No. 463 at 15-16.)

---

[10]     "That action by the SEC was brought against Financial Group, Ltd, and states, at ¶ 20, on page 5, the Director of the Financial Group had made an investment in Argyll Equities of $9.6 million." (Doc. No. 459 at 10.)

1    Assuming for the purposes of argument that the information was exculpatory, here,

2 it appears that Movant had enough prior knowledge and access to publicly available

3 documents to be able to acquire the supposed *Brady* material on his own. A defendant

4 cannot claim a *Brady* violation if he was "aware of the essential facts enabling him to

5 take advantage of any exculpatory evidence." *United States v. Shaffer*, 789 F.2d 682, 690

6 (9th Cir. 1986) (citation and quotation omitted). When a "defendant is aware of the

7 essential facts enabling him to take advantage of any exculpatory evidence,' the

8 government's failure to bring the evidence to the direct attention of the defense does not

9 constitute suppression." *Cunningham v. Wong*, 704 F.3d 1143 (9th Cir. 2013). In this

10 case, the Court concludes that Movant has not demonstrated a *Brady* violation with

11 respect to the Respondent's failure to produce information from the Northern District of

12 Illinois SEC case. Therefore, the Court **DENIES** relief on this claim.

13

14      **2.    Denial of Due Process arising from the Government's introduction of an
15            improper case theory at trial.**

16    Movant's second due process claim alleges that the government initially sought to

17 present the SEC evidence as incriminating on the issue of intent, but later did not,

18 presumably because it knew it was not accurate.[11] (Doc. No. 459 at 11.)

19    Respondent contends that Movant's argument is based on one paragraph in the

20 SEC Complaint referencing "Argyll Equities" out of 89 other paragraphs that did not.[12]

21 (See Doc. No. 463 at 17.) Specifically, Movant's argument rests on a single paragraph

22

23 ───────────────────────────────

24 [11]    "A look at the SEC complaint shows it was proceeding on facts that contradicted
      the Government's theory that Argyll was always undercapitalized, yet the Government
25 still proceeded with that theory" which tends to indicate the "Government presented a
      theory it knew was false or misleading, in violation of *Alcorta v. Texas*, 355 U.S. 28, 31
26 (1957)." (Doc. No. 459 at 11.)

27 [12]    "In the paragraph, it states that from June 2003 through November 2004,
      approximately $9.6 million was invested in a 'purported stock loan program operated by
28 Argyll Equities.'" (Doc. No. 463 at 17.)

that "neither contradicts any of the Government's evidence," nor supports Movant's defense because it does not prove that Argyll had "$9.6 million" available to it in liquid assets to fund any of the loans since most of the stock-loan agreements entered during the 2002-2004 timeframe had three-year terms. *Id.* Thus, Movant has not refuted, nor proven false, Respondent's theory that Argyll was undercapitalized.

In this case, Movant has simply presented an allegation mentioned in a Complaint. Considering all the evidence presented by Respondent, it is highly improbable that a jury would have decided the outcome of this case any differently had it been presented with this evidence. Thus, the Court concludes that Movant has not demonstrated a *Brady* violation with respect to the Respondent's alleged initial intent to present an improper case theory at trial. Therefore, the Court **DENIES** relief on this claim.

## C.    Certificate of Appealability

To appeal a district court's denial of a § 2255 petition, a petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To satisfy this standard, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated above, no reasonable jurist could conclude that Movant is entitled to relief on the arguments set forth in her § 2255 Motion. Accordingly, the Court declines to grant Movant a certificate of appealability.

///
///
///
///
///
///
///

14

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Movant's § 2255 motion to vacate, modify, or correct his sentence.  The Court also declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Dated: March /4, 2020

Hon. Roger T. Benitez
United States District Judge